**Margaret COYNE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (VILLANOVA UNIVERSITY and PMA Group), Respondents**

**Villanova University, Petitioner**

v.

**Workers' Compensation Appeal Board (Coyne), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 7, 2007.
Decided Feb. 11, 2008.

Richard Frumer, Bryn Mawr, for designated petitioner, Margaret Coyne.

David G. Greene, Philadelphia, for designated respondent, Villanova University.

BEFORE: LEADBETTER, President Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Both Margaret Coyne (Claimant) and Villanova University (Employer) petition for review from an Order of the Workers' Compensation Appeal Board (Board). We affirm in part, vacate in part, and remand for the reasons stated below.

Claimant worked for Employer as a reference librarian. On March 23, 1999, she was attempting to fix a paper jam. She fell off the stool she was standing on and her right foot became entangled in the same. Claimant missed approximately two weeks of work following her injury but returned thereafter at modified duty with no loss of earnings.

At the time of her injury, Claimant was working under a one-year employment contract that ran from June 1, 1998 through May 31, 1999. On May 11, 1999, Claimant was informed that her contract was not going to be renewed. She was asked on that date to take her belongings

and to leave the campus. Claimant was paid to the end of her contract and received severance pay, holiday pay, and vacation pay. She applied for unemployment and Employer did not contest her claim.

Claimant subsequently obtained employment at Omnicare from December 13, 1999 through May 28, 2001. Her employment was terminated at that place of business due to economic reasons. Claimant filed a Claim Petition on January 23, 2002 seeking workers' compensation benefits for the injury to her right ankle. In the space indicating what indemnity benefits she was seeking, Claimant indicated "To Be Determined." Employer filed an Answer specifying, in pertinent part:

9. Admitted that this problem caused claimant to stop working for a day or two, at most. It is denied that this problem resulted in an entitlement to compensable disability within the meaning of the Pennsylvania Workers' Compensation Act[1] and strict proof of the same is demanded . . .

14. Claimant/claimant's attorney did not state a specific remedy for which either partial disability or total disability benefits can be granted . . .

15. Admitted to the extent any medical charges are reasonable, necessary, and causally related to claimant's March, 1999 work injury . . . [²]

Claimant further filed a Penalty Petition alleging that Employer violated the Act by failing to investigate her injury and by failing to pay her wage loss benefits and medical expenses. She sought fifty percent penalties for these violations.

In February of 2002, Claimant began working at Ridley Township Public Library. She was not hired beyond her six-month probationary period and received a termination letter on July 23, 2002. On April 7, 2003, Claimant filed a Reinstatement Petition alleging that as of May 11, 1999, she experienced a worsening of her condition resulting in decreased earning power.

By a Decision circulated October 21, 2003, the WCJ determined that Claimant sustained a work-related injury to her right ankle on March 23, 1999.[3] She suspended her benefits through May 31, 1999 as Claimant received her full salary through that date. She further found Employer was entitled to a termination of benefits as of August 26, 2002. The WCJ concluded, however, that Claimant was entitled to total disability for any periods she was unemployed between May 31, 1999 and August 26, 2002. She added that Claimant was entitled to partial disability while employed at Omnicare and the Ridley Township Library.[4] Consequently, she granted Claimant's Reinstatement Petition and based Claimant's benefits on an aver-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626. Hereinafter referred to as "Act."

2. Employer did not file this Answer until April 8, 2002. Claimant made a *Yellow Freight* Motion pursuant to *Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board (Madara)*, 56 Pa.Cmwlth. 1, 423 A.2d 1125 (1981)(holding the failure to file a timely answer precludes an employer from presenting any evidence in rebuttal, or an affirmative defense to the alleged facts in the petition). The WCJ denied Claimant's motion as Em-

ployer was not contesting any of the well-pled facts.

3. The WCJ did not specify the exact nature of Claimant's injury.

4. In Finding of Fact No. 8, the WCJ indicated Claimant submitted an earnings statement from Omnicare for the period ending May 18, 2001. That document indicated Claimant earned gross wages of $1,346.15 for a two week period, thereby giving her a weekly salary of $673.08. The importance of this fact will be discussed later in this Opinion.

age weekly wage of $768.00. The WCJ instructed that Employer was entitled to a credit for the unemployment compensation and severance benefits received by Claimant. The WCJ denied Claimant's Penalty Petition. She found Employer presented a reasonable contest. Both parties appealed.

In an Opinion dated April 27, 2005, the Board vacated the WCJ's Decision to the extent the WCJ denied Claimant's Penalty Petition in light of the fact that she made no findings on the merits of that Petition. It remanded the matter to the WCJ for further findings of fact and conclusions of law on the same. The Board withheld judgment on Claimant's argument that the WCJ erred in finding Employer presented a reasonable contest as her determination on that issue may change upon her consideration of the matter on remand. It affirmed the WCJ's Decision in all other respects.[5]

The WCJ issued a new Decision on February 7, 2006, wherein she concluded that Employer violated the Act by failing to issue a document accepting an injury following Claimant's fall at work. Consequently, she granted Claimant's January 23, 2002 Penalty Petition and awarded a twenty-five percent penalty. The WCJ further found that Employer "did not really timely admit what was not contested in the Remanded Claim, Penalty, or Reinstatement Petitions." Therefore, she determined that Employer presented an unreasonable contest and awarded attorney's

fees totaling "twenty percent of all compensation owed under the original decision." The WCJ also granted Claimant's July 13, 2004 Penalty Petition and awarded fifty percent penalties. She concluded Employer unreasonably contested this subsequent Petition and awarded $1,400.00 in unreasonable contest attorney's fees. Both parties appealed.

The Board issued an Opinion on March 14, 2007. It reversed the WCJ's determination that Employer presented an unreasonable contest to the initial Claim, Reinstatement, and Penalty Petitions. As to the Claim and Reinstatement Petitions, the Board reasoned that Employer presented evidence that, if believed, would defeat Claimant's claim for disability benefits. As to the Penalty Petition, the Board reasoned that although Employer violated the Act by failing to issue a bureau document accepting or denying liability following receipt of notice of Claimant's injury, Claimant did not allege this violation in her Petition. Instead, she asserted a general failure to investigate and a failure to pay benefits. Consequently, it concluded that Claimant was not entitled to unreasonable contest attorney's fees with respect to these Petitions. The Board affirmed the WCJ's February 7, 2006 Decision in all other respects. This appeal by both parties followed.[6]

■ Claimant argues on appeal that because Employer failed to issue any bureau

---

5. Employer requested supersedeas upon filing its appeal of the WCJ's October 21, 2003 Decision. The Board denied Employer's request in an Order dated December 5, 2003. On July 13, 2004, Claimant filed a Penalty Petition alleging Employer violated the Act by failing to pay benefits due pursuant to the WCJ's October 21, 2003 Decision. She sought fifty percent penalties on all unpaid compensation. This Petition was consolidated with the remanded Petitions.

6. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial, competent evidence and whether constitutional rights were violated. *Guthrie v. Workers' Compensation Appeal Board (Travelers' Club, Inc.)*, 854 A.2d 653 (Pa.Cmwlth. 2004).

documents, i.e., a notice of compensation payable (NCP) or a notice of compensation denial (NCD), and because her Claim and Reinstatement Petitions were granted, Employer should have, at minimum, been required to pay indemnity benefits through October 21, 2003, the date of the WCJ's initial Decision, notwithstanding the fact that her benefits were terminated as of August 26, 2002. Employer argues that the WCJ erred in awarding any indemnity benefits between May 31, 1999 and August 26, 2002 because Claimant's wage loss was not due to her work-related injury but rather Employer's decision not to renew her contract for employment due to her caustic relationship with co-workers and students.

Employer's argument is somewhat novel in that it involves the consequences of the expiration of an employment contract as it relates to a claimant's entitlement to indemnity benefits thereafter. A question arises as to whether a situation such as this is more akin to a termination or to a layoff. This is important as the circumstances surrounding Claimant's departure will affect the parties' respective burdens. While the answer to this question in all probability will have to be made on a case by case basis, the facts in this instance liken themselves to a termination from employment as opposed to a layoff. This Court notes the absence of economic reasons factoring into the decision not to renew Claimant's contract and the presence of complaints concerning her behavior that allegedly led to the decision that her contract not be renewed.

In a claim petition, the burden of establishing a right to compensation and of proving all necessary elements to support an award rests with the claimant. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). The claimant must establish that her injury was sustained during the course and scope of employment and is causally related thereto. *McCabe v. Workers' Compensation Appeal Board (Dep't of Revenue)*, 806 A.2d 512 (Pa.Cmwlth.2002). The claimant is also required to establish the length of her disability.[7] *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa.Cmwlth. 141, 646 A.2d 51 (1994). That burden never shifts to the employer. *Inglis House*, 535 Pa. at 141, 634 A.2d at 595.

An employer may, however, rebut a claimant's proof of loss of earning power by demonstrating "that suitable work was available or would have been available but for circumstances which merit allocation of the consequences of [a] discharge to the claimant, such as claimant's lack of 'good faith.'" *Vista Int'l Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (1999). A showing of a lack of good faith, or bad faith, on the part of the claimant, is not the same as the willful misconduct standard sufficient to deny unemployment compensation. *Shop Vac Corp. v. Workers' Compensation Appeal Board (Thomas)*, 929 A.2d 1236 (Pa.Cmwlth.2007). If, however, an employer establishes willful

---

7. Although it is apparent that the WCJ awarded Claimant indemnity benefits when she granted her Reinstatement Petition, we note that this litigation commenced with the filing of a Claim Petition. The procedural posture of this case did not advance beyond that point thereby rendering the Reinstatement Petition unnecessary. Thus we utilize the law concerning claim petitions in analyzing this case. Regardless, Claimant would have the burden to establish a disability in order to receive indemnity benefits under either type of petition. Disability is synonymous with a loss of earning power. *Ruth Family Med. Ctr. v. Workers' Compensation Appeal Board (Steinhouse)*, 718 A.2d 397 (Pa.Cmwlth.1998).

946

misconduct, it has presented sufficient evidence to preclude an award of benefits. *Virgo v. Workers' Compensation Appeal Board (County of Lehigh–Cedarbrook)*, 890 A.2d 13 (Pa.Cmwlth.2005). Nonetheless, generally, some " 'bad faith' willful misconduct" on the part of the claimant that caused the discharge has to be established or benefits will be payable. *Id.* at 19. The WCJ, as fact finder, determines whether a claimant was discharged for conduct evidencing lack of good faith. *Second Breath v. Workers' Compensation Appeal Board (Gurski)*, 799 A.2d 892 (Pa. Cmwlth.2002).

It has previously been held that a claimant is entitled to disability benefits if she is discharged for misconduct that took place prior to the work-related injury as her loss of earnings shall be deemed to have resulted from the work injury. *United Parcel Serv. v. Workmen's Compensation Appeal Board (Portanova)*, 140 Pa.Cmwlth. 626, 594 A.2d 829 (1991). This Court noted that "allowing an employer to discharge an employee ... because of misconduct committed prior to her work related injury creates too much potential for abuse." *Id.* at 832. The dissent in that case disagreed, stating "[t]here is as much potential for abuse one way as there is the other; for example, an employee, once having suffered a compensable injury, might believe—rightly so under the majority's view—that he can do whatever he pleases and not be vulnerable to discharge...." *Id.* In *Edwards v. Workers' Compensation Appeal Board (SEAR'S Logistic Serv.)*, 770 A.2d 805 (Pa.Cmwlth.2001), we rejected the holding of *Portanova* and clarified that the only relevant issue in deciding whether a claimant's benefits should be suspended is whether *the loss of earnings was no longer the result of the work injury*.

In the case *sub judice,* Employer presented the testimony of its Associate Dean for Information Technology, William James, who testified he received complaints about Claimant during the 1997 to 1998 and 1998 to 1999 school years. He explained that complaints came from students as well as from her co-workers and supervisors. Dean James stated that complaints generally concerned a lack of teamwork, lack of communication, and erratic behavior. According to Dean James, he met with general counsel and the director of human resources and it was ultimately determined that Claimant's contract would not be renewed. Dean James acknowledged that Claimant was a very knowledgeable person. Nonetheless, he felt there was evidence of misconduct on the part of Claimant due to her inability to cooperate. He agreed that Thomas Bull, director of human resources at the time Claimant's contract expired, wrote a letter to the unemployment compensation authorities stating that her contract was not renewed and that Employer did not allege misconduct.

Employer further presented the testimony of Nazareth Pantaloni, who was, at all relevant times, in charge of supervising all aspects of public services for the law library as assistant director for reader services. Mr. Pantaloni stated that he drafted a memorandum to Claimant dated August 18, 1998 urging her to be more collegial with her coworkers and to be more cooperative with regard to some technological changes going on at the library. Mr. Pantaloni explained that in 1998, Employer adopted a new e-mail system and it was incumbent on the law library staff to train the entire faculty and potentially all of the incoming students on this new system. He maintained that Claimant was not only critical of the new system, but she refused to participate in the training

programs that were being set up.[8] Mr. Pantaloni acknowledged that he received written complaints from faculty and staff concerning Claimant. He averred that many of the complaints were about Claimant openly chastising someone for doing inconsequential tasks. As an example, Mr. Pantaloni cited her public admonishment of a colleague about the way the individual shook a laser printer toner cartridge.

Mr. Pantaloni related another incident whereupon he needed to find out what day Claimant needed off for oral surgery because he needed to prepare the staff schedule. He acknowledged that Claimant had told him before but he forgot to record the date. According to him, Claimant was difficult and initially told him he should remember the date but then said she did not know when her appointment was because she had to schedule her appointment twenty-four hours in advance. Mr. Pantaloni testified that overall Claimant's behavior had a negative impact on productivity in that it protracted the amount of time it took certain projects to be completed and reduced the number of projects the library staff could undertake. Nonetheless, he conceded that Claimant's skills were of high caliber and that she was a competent reference librarian.

Employer further presented the testimony of Bernadette DiPasquale, library assistant, who testified that she prepared four memos. The first memo was dated October 17, 1996 and described an incident whereupon she provided advice to a first-year law student who was having difficulty tackling a research paper. She did not provide any substantive information, but rather a means to approach the problem. Ms. DiPasquale stated that after she had

helped the student, Claimant came running over yelling at her and at the student. Claimant told the student that he should not listen to Ms. DiPasquale because she was not a reference librarian and therefore would be wrong. Claimant told Ms. DiPasquale that she should move away from the reference desk, stop answering students' questions and quit working at the library.

The remaining three memos drafted by Ms. DiPasquale, the final being written on January 27, 1999, all dealt with Claimant interfering in Ms. DiPasquale's performance of her job. The memos memorialized other incidents of Claimant yelling at her. These incidents occurred, stated Ms. DiPasquale, despite the fact that Claimant had no supervisory responsibilities. Ms. DiPasquale testified that Claimant's unprofessional conduct became more frequent between 1996 and 1999. She remarked that following her ankle injury, Claimant became even more rude and obnoxious. The witness stated that she had no personal knowledge as to whether Claimant was disciplined for any of the incidents she reported.

Employer presented four other lay witnesses, Karen Jordan, Lynne Maxwell, Susan Cody, and Mary Cornelius, whose testimony essentially supports the proposition that Claimant is otherwise a competent, knowledgeable reference librarian, but she does not work well with others and is disrespectful to her supervisors, co-workers, and students. Moreover, Claimant's outbursts had increased in the time prior to the expiration of her employment contract on May 31, 1999.

Upon reviewing this evidence, the WCJ made the following dispositive findings:

---

**8.** Regarding Claimant's criticism of the new e-mail system, Mr. Pantaloni noted overhearing a student ask Claimant about the new e-mail system and she responded that it did not work and that it was no good.

27. This Workers' Compensation Judge has carefully reviewed the testimony of Karen Jordan, Lynne Maxwell, Susan Cody, Mary Cornelius and Bernadette DiPasquale and find (sic) their testimony credible and consistent to the extent that Claimant was hardworking, possessed excellent computer and library skills, but had problems dealing with students and library staff .... This Judge further notes that Ms. DiPasquale testified that Claimant was not disciplined for any of her outbursts or instances of inappropriate behavior she had in the workplace prior to her work injury....

28. This Workers' Compensation Judge has carefully reviewed the testimony of William James and Nazareth Pantaloni and finds their testimony to be credible to the extent that Claimant sustained a work injury to her right ankle on March 23, 1999 and that Claimant was a very competent librarian. This Judge finds Dean James' testimony credible regarding the decision not to renew Claimant's contract and the administrative procedures involved. The Judge finds that through Dean James' testimony, Employer's human resources director indicated by letter to the Pennsylvania Unemployment Commission that Employer was not alleging any misconduct on the part of the Claimant. The Judge finds Mr. Pantaloni's testimony credible where he had personal knowledge of Claimant's behavioral problems and that he discussed these problems with the Claimant. This Judge notes that neither Dean James nor Mr. Pantaloni ever mentioned to Claimant before her injury that she was going to be disciplined or

terminated because of complaints filed against her.

Based on these findings, the WCJ found that Claimant was entitled to varying degrees of indemnity benefits from May 31, 1999 through August 26, 2002, the date her benefits were terminated. Upon review, we believe a remand is necessary.

As we have indicated, the matter before us is similar to a situation where a claimant is discharged from her employment. In such a situation, the employer is entitled to a suspension of benefits if it can establish that the claimant was fired for conduct amounting to bad faith even if that conduct does not amount to willful misconduct under the unemployment compensation law. *Vista.* The WCJ did not undertake any real analysis as to whether Employer's decision not to renew her contract was based on conduct tantamount to bad faith. Certainly such analysis is warranted in this matter in light of the behavioral characteristics testified to by Employer's lay witnesses.

We point out that WCJ's findings may be read to indicate she believed a suspension was precluded because Claimant was not informed prior to her injury that she may be disciplined or let go because of her behavior. While this fact may have been relevant under the law as set forth in *Portanova,* this Court in *Edwards* clarified that the only relevant issue in deciding whether a claimant's benefits should be suspended is whether the claimant's loss of earnings was not the result of the work injury.[9] Furthermore, the WCJ's finding may be read to indicate that she believed benefits could not be suspended in light of the fact that Mr. Bull sent a letter to the unemployment compensation authorities in

9. This fact notwithstanding, we have reviewed the August 12, 1998 memorandum drafted by Mr. Pantaloni to Claimant that was written seven months prior to her work injury. The letter was very strong in its admonishment for her conduct at work and "urge[d][her] to take major steps at addressing these problems."

reference to Claimant's unemployment compensation claim asserting that Employer was not alleging any misconduct. Pursuant to *Shop Vac*, while evidence of willful misconduct will satisfy a showing of bad faith necessary in the workers' compensation context, it is not the sole means to show bad faith sufficient to warrant a suspension. While willful misconduct may evidence bad faith, it does not necessarily follow that bad faith must rise to the level of willful misconduct. Consequently, we vacate the Board's Order to the extent it affirms the WCJ's determination that Claimant is entitled to varying degrees of indemnity benefits from May 31, 1999 through August 26, 2002 and remand for new findings of fact and conclusions of law as to whether Claimant's contract was not renewed because of conduct tantamount to bad faith.[10]

█ Because we are remanding this matter, we must address Employer's argument that the WCJ erred in prohibiting Employer from taking the deposition of Mr. Bull. As explained above, during his deposition on May 6, 2003, Dean James,

on cross-examination, agreed that a letter signed by Mr. Bull addressed to the Unemployment Compensation Commission indicated that Employer did not allege misconduct. (R.R. 101b). Employer's counsel unilaterally scheduled the deposition of Mr. Bull for May 27, 2003. (R.R. 164b). Claimant's counsel objected, specifically challenging whether Employer can take rebuttal of its own witness. (R.R. 166b). At a hearing held May 29, 2003, the WCJ explained that all evidence was to be completed by that day. (R.R. 48a). Employer's counsel asked for an exception to the preclusion of Mr. Bull's deposition. (R.R. 63a). The WCJ asserted:

> All evidence was to be completed by today; it's not completed, it was not timely scheduled. There was a valid Objection.
>
> I'm precluding the deposition; you have an Exception.

(R.R. 65a).

A party wishing to present depositions for rebuttal shall notify the WCJ in writing within twenty-one days after the con-

---

10. We acknowledge that whether Employer alleged misconduct in Claimant's unemployment compensation case or whether Claimant was warned of potential discipline for her conduct prior to her injury may be factors to be considered when determining whether bad faith was established. We cannot ignore, however, the fact that the WCJ did not utilize the bad faith standard to begin with when adjudicating Claimant's claim. In the event that, on remand, the WCJ declines to find Claimant's separation from her employment from Employer was due to conduct tantamount to bad faith, the conclusion of the WCJ that Claimant is entitled to total disability benefits from May 31, 1999 through August 26, 2002 with intermittent periods of partial disability for periods wherein she was employed at other businesses remains valid. As acknowledged above, the WCJ indicated in her Finding of Fact No. 8, that Claimant had a weekly salary of $673.08 while working for Omnicare based on an earnings statement for

the period ending May 18, 2001. Employer argues that the WCJ erred in relying on this document as it submitted documentation concerning a full year's worth of wages at Omnicare as indicated in Finding of Fact No. 22. Employer's evidence suggests Claimant earned $36,399.92 in a one year period at Omnicare yielding an average weekly salary of $699.99. These slightly higher earnings would necessitate slightly lower partial disability benefits for the period Claimant was employed at Omnicare. The WCJ does not specifically resolve the conflict in this evidence in her Decision. If necessary, the WCJ, on remand should definitively select a wage rate for Claimant's work at Omnicare and explain the basis for her determination. *See Shustack v. Workmen's Compensation Appeal Board (B–D Mining Co.)*, 141 Pa.Cmwlth. 296, 595 A.2d 719 (1991) (holding a remand is appropriate when the WCJ's findings fail to resolve a necessary issue raised by the evidence or the parties).

duct of the hearing or deposition at which the testimony to be rebutted has been given. 34 Pa.Code § 131.63(d). Following a request to present rebuttal testimony, the testimony shall be taken no later than forty-five days after the conclusion of the case of the party presenting the testimony to be rebutted. 34 Pa.Code § 131.53(e). Nonetheless, the WCJ may, for good cause shown, waive or modify any provision of the Special Rules of Administrative Practice and Procedure Before Workers' Compensation Judges [i.e. Chapter 131]. 34 Pa.Code § 131.3(a).

■ Generally, the admission of evidence is committed to the sound discretion of the WCJ. *Atkins v. Workers' Compensation Appeal Board (Stapley in Germantown)*, 735 A.2d 196 (Pa.Cmwlth.1999). Moreover, whether the WCJ should waive any of the rules contained in Chapter 131 is a matter of discretion. *Id.* at 199. The test to determine whether the WCJ erred in waiving the rules is whether there has been an abuse of discretion. *Id.* The WCJ has control over when to close the record. *See Sherrill v. Workmen's Compensation Appeal Board (Sch. Dist. of Phila.)*, 154 Pa.Cmwlth. 492, 624 A.2d 240 (1993)(holding the WCJ has discretion to reopen the record once it has been closed). Indeed, the WCJ's duty is to resolve the claims before her in a fair and *efficient* manner. *Id.* at 245. Further, it is axiomatic that workers compensation proceedings are governed by relaxed standards and the technical rules of evidence are not necessarily applicable. *Edwards v. Workers' Compensation Appeal Board (MPW Indus. Serv.)*, 858 A.2d 648 (Pa.Cmwlth.

2004); *see also LeDonne v. Workers' Compensation Appeal Board (Graciano Corp.)*, 936 A.2d 124 (Pa.Cmwlth.2007).

Based on the principle reiterated in *Edwards* and *LeDonne* that workers' compensation proceedings are governed by relaxed standards, it does not appear that it is of much significance that Employer sought to take evidence in rebuttal of its own witness. Nonetheless, this case was pending before the WCJ for nearly a year and a half before Employer expressed its desire to take Mr. Bull's deposition. The testimony of Claimant, the medical experts, and numerous lay witnesses had already been taken. Moreover, Employer scheduled the deposition at issue immediately prior to what was scheduled to be the final hearing on this matter. In light of the fact that the WCJ has authority over what evidence is admitted, *Atkins,* and in light of her charge to resolve claims in an efficient manner, *Sherrill,* we see no abuse of discretion in the WCJ's determination to prohibit Employer from taking the deposition of Mr. Bull.[11]

If, however, the WCJ believes that it is necessary in order to carry out our remand order, the WCJ may permit Employer the opportunity to take the deposition testimony of Mr. Bull. Nonetheless, we point out, in weighing the necessity of this testimony, the WCJ should take heed of our instruction that the willful misconduct standard applicable in unemployment compensation cases is not the standard employed in workers' compensation cases.

■ Notwithstanding the fact that we are remanding this matter to the WCJ for

---

11. Employer questions the WCJ's statement that the deposition was not timely scheduled and argues that it complied with both 34 Pa.Code § 131.63(d) and 34 Pa.Code § 131.53(e). While this may be true, we note that the WCJ may waive the rules established in Chapter 131 upon good cause shown. 34 Pa.Code § 131.3(a). Furthermore, we read the WCJ's explanation regarding the timeliness to be more concerned with the proposed deposition's relation to the final scheduled hearing and the previously mentioned duration of the proceedings.

further findings as to whether Claimant's earnings loss is due to her bad faith conduct as opposed to her work-related injury for the period between May 31, 1999 through August 26, 2002, we must address Claimant's argument that she should have been awarded indemnity benefits through October 21, 2003, the date of the WCJ's original decision based on Employer's failure to issue any bureau documentation.

■ An employer violates Section 406.1 of the Act[12] if it fails to issue an NCP, an NCD, or a Notice of Temporary Compensation Payable (NTCP) within twenty-one days of receiving notice of a work-related injury. *Johnstown Housing Auth. v. Workers' Compensation Appeal Board (Lewis)*, 865 A.2d 999 (Pa.Cmwlth. 2005). Consequently, it can be liable for penalties for failure to comply with this provision. *Brutico v. Workers' Compensation Appeal Board (U.S. Airways, Inc.)*, 866 A.2d 1152 (Pa.Cmwlth.2004). Moreover, when an employer fails to issue an NCP or an NCD within the appropriate timeframe, thereby forcing the claimant to litigate the compensability of an injury, the employer will be liable for the payment of the claimant's attorney's fees unless it can prove its contest was reasonable. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164 (Pa.Cmwlth.2003). Thus, an award of penalties and attorney's fees are the appropriate remedies for an employer's failure to issue bureau documents within twenty-one days of receiving notice of a work-place injury. We are not aware of any authority permitting an award of benefits to a claimant who would not otherwise be entitled to them based upon an employer's failure to comply with the Act.

Nonetheless, in support of her argument, Claimant cites *Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.)*, 713 A.2d 182 (Pa.Cmwlth.1998) and *Williams v. Workmen's Compensation Appeal Board (AT & T Tech., Inc.)*, 144 Pa.Cmwlth. 297, 601 A.2d 473 (1991). Neither case supports the remedy sought by Claimant.

■ The Court, in *Sheridan*, held that once the obligation to pay benefits has been imposed by an NCP or some other type of legally operative document, that obligation continues until there is some event that relieves the employer of the obligation. In the instant matter, Employer was under no obligation to commence paying benefits until the WCJ's October 21, 2003 Order. As that Order awarded a closed period of disability concluding on August 26, 2002, Employer need not pay indemnity benefits through the date of the Decision.

In *Williams*, the claimant, Judith Ann Williams (Williams) sustained an elbow injury while working for AT & T Technologies, Inc. (AT & T). Rather than issue a compensation agreement or denial of liability within the statutory period specified by Section 406.1 of the Act, AT & T elected to reassign Williams to a light-duty position within her medical restrictions at full pay. Subsequently, Williams was laid off for alleged economic reasons. She filed a claim petition to obtain disability benefits in accordance with her injury. We stated that prior to the lay-off, AT & T, at the very least, was obligated to execute a supplemental agreement fixing a suspension in light of the admitted liability and disability incurred by Williams. We further instructed that upon laying Williams off, it was incumbent upon AT & T to refer Williams to an available job within her physical restrictions to avoid a reinstatement of benefits. Thus, we remanded the matter for an entry of an order for benefits to be paid to Williams during her time

12. Section 406.1 was added by the act of February 8, 1972, P.L. 25, 77 P.S. § 717.1.

of unemployment. We conceded, however, that it was not error for AT & T to fail to pay benefits during periods when it employed Williams at earnings equal to her pre-injury wage. This is important as we did not award benefits for any period Williams would not otherwise be entitled to them. As such, this case does not support Claimant's argument that she should receive benefits after the effective date of her termination.

Claimant next argues that the WCJ erred in terminating her benefits as of August 26, 2002. We disagree noting a WCJ can terminate benefits within the context of a claim petition even when the employer never filed a termination petition. *Connor v. Workmen's Compensation Appeal Board (Super Sucker, Inc.)*, 155 Pa.Cmwlth. 102, 624 A.2d 757 (1993).

Claimant testified that on March 23, 1999, she was standing on a stool attempting to remove a paper jam. She stated she lost her balance, her foot became entangled in the stool, and she fell to the ground. Claimant explained that her ankle became swollen and discolored and that she sought medical attention. According to Claimant, she underwent physical therapy until her improvement plateaued. She was given an ankle brace, orthopedic shoes, and a stretch band to perform home exercises. She testified that her ankle is still swollen and that she still wears orthopedic shoes for support. Claimant added that if her ankle is touched at a certain point, it is extremely painful.

Claimant presented the testimony of Steve Klein, D.O., board certified in family practice, who saw her on April 1, 2002. Upon examination, Dr. Klein noted that the circumference of her right ankle was one-half inch shorter than the left. He felt that the size difference was attributable to Claimant's work injury. Dr. Klein diag-

nosed Claimant with right ankle trauma with strain and sprain, and mild atrophy. He opined that Claimant could not return to her pre-injury job because she is unable to walk any distance, carry heavy books, or stand for extended periods or climb stairs without pain. At the time he issued his report memorializing his findings, on November 4, 2002, the only record he had been able to review was the report of Employer's independent medical examiner. Although he was supplied with some medical records thereafter, he was not supplied with certain pertinent records.

Employer presented the testimony of Steven M. Raikin, M.D., board certified orthopedic surgeon, who examined Claimant on August 26, 2002. Dr. Raikin reviewed films of an August 1999 MRI that showed some swelling around the anterior talofibular ligament. Upon physical examination, he observed that Claimant walked with a normal gait. She had no swelling around the ankle and had full range of motion, although she did exhibit some subjective tenderness around the anterolateral aspect of the ankle. Dr. Raikin agreed that Claimant's work injury was a Grade 2 right ankle sprain as initially diagnosed by "Dr. Burke." He stated that Claimant was fully recovered from her March 23, 1999 injury and that she had subjective complaints without any objective findings. According to Dr. Raikin, he found nothing to indicate that Claimant would be prohibited from performing her pre-injury job as a reference librarian. Dr. Raikin acknowledged that Dr. Klein found a half inch difference in the circumference at the biomechanical level of the ankle, but he explained that this could be a normal finding in an average person. He stated it was not necessarily an indicator of atrophy and could result simply from someone being right-handed or right-footed. In giving his testimony, he noted that Claimant

did not seek medical treatment between November of 1999 and the date of his independent medical examination.

■■■ The WCJ credited Claimant's testimony that she sustained a right ankle injury in the course and scope of her employment on March 23, 1999. She rejected Claimant's testimony, however, to the extent Claimant stated she continues to be hampered by that injury. The WCJ rejected Dr. Klein's testimony to the extent Dr. Klein opined that Claimant was not fully recovered from her injury or that she would not be able to perform her pre-injury job. Important to her determination was that Dr. Klein relied heavily on Claimant's subjective complaints and did not review her medical records or diagnostic studies.[13] The WCJ credited the opinion of Dr. Raikin that as of August 26, 2002, Claimant had fully recovered from her right ankle injury and is capable of working her pre-injury job as a reference librarian. Crucial to this finding was Dr. Raikin's observation that Claimant did not seek medical attention for her injury between November 1999 and August 2002.[14] Consequently, the WCJ found that although Claimant sustained a work-related right ankle injury, she was fully recovered from such injury by the date of Dr. Raikin's examination.

Upon review of the aforementioned, we see no error in the WCJ's determination. Based on the credible evidence of record, Claimant established she sustained a right ankle injury in the course and scope of her employment. Pursuant to both *Inglis House* and *Innovative Spaces*, however, Claimant retained the burden to establish the duration of her disability throughout the pendency of her Petition. The WCJ rejected Claimant's testimony as well as Dr. Klein's testimony that Claimant continued to be impacted by her 1999 injury. On the contrary, the WCJ credited the opinion of Dr. Raikin that Claimant was fully recovered from her work-related injury as of his examination on August 26, 2002 and that she could return to her pre-injury job. Consequently, she was unable to meet her burden of showing that she continued to be disabled by her work injury after that date. As such, we see no error in the WCJ's determination in that regard. *Connor.*

Claimant more specifically argues that Dr. Raikin's testimony is equivocal and, therefore, cannot support a termination of benefits. In support of her argument, she cites Dr. Raikin's report wherein he indicated as follows:

> Patient's old MRI was reviewed today. This, unfortunately is three years old now ... A new MRI may be beneficial in excluding any previously unrecognized pathology ... Excluding any unexpected findings on an MRI, it is my opinion that the patient is (sic) otherwise reached her maximal medical improvement at this time ... The only additional evaluation again would be a potential repeat MRI.

(R.R. 180a–181a).

Moreover, Claimant references Dr. Raikin's testimony whereupon, in discussing the 1999 MRI, he explained:

---

**13.** The WCJ further indicated that Dr. Klein's finding that Claimant's right ankle measured one-half inch less than her left ankle was sufficiently explained away by Dr. Raikin.

**14.** The WCJ is the final arbiter of witness credibility and the weight to be accorded evidence and may accept or reject the testimony of any witness in whole or in part. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck),* 664 A.2d 703 (Pa. Cmwlth.1995).

It was my feeling at that time that the MRI that was reviewed was three years old and secondary changes from her chronic pain may be present on a newer MRI, which may pick up some previously unrecognized pathology, although based on clinical experience and clinical evaluation, I thought that the yield of this would probably be fairly low.

(R.R. 155a).

At the outset, we remind Claimant that Employer did not commence the instant proceedings by filing a termination petition. On the contrary, Claimant initiated the litigation by filing the Claim Petition. Consequently, Employer did not bear the burden of proof in this matter and, as indicated above, Claimant had the burden to establish she sustained a work-related injury and the duration of her subsequent disability. *Inglis House; Innovative Spaces.* Moreover, in contesting Claimant's Claim Petition, Employer had no obligation to present any evidence. *Bonegre v. Workers' Compensation Appeal Board (Bertolini's),* 863 A.2d 68 (Pa.Cmwlth. 2004). Therefore, at least in theory, it is irrelevant whether Dr. Raikin's testimony is equivocal.

Nonetheless, we cannot ignore the fact that the WCJ rendered her credibility determinations in part by comparing Dr. Klein's testimony with that of Dr. Raikin and accepting the Employer's medical witness over that of Claimant's expert. Thus, it would be prudent to determine whether Dr. Raikin's opinion constitutes competent evidence to support a finding that Claimant fully recovered from her right ankle sprain as of August 26, 2002.

Medical testimony will be deemed incompetent if it is equivocal. *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College),* 794 A.2d 443 (Pa.Cmwlth.2002). Medical testimony will be found unequivocal if the medical expert, after providing a foundation, testifies that in his professional opinion that he believes a certain fact or condition exists. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Bd. of Educ.),* 80 Pa.Cmwlth. 640, 472 A.2d 1176 (1984). Medical testimony is equivocal if, after a review of a medical expert's entire testimony, it is found to be merely based on possibilities. *Signorini v. Workmen's Compensation Appeal Board (United Parcel Serv.),* 664 A.2d 672 (Pa.Cmwlth.1995). In determining whether medical testimony is unequivocal, the medical witness's entire testimony must be reviewed and taken as a whole and a final decision should not rest upon a few words taken out of the context. *Indian Creek Supply v. Workers' Compensation Appeal Board (Anderson),* 729 A.2d 157 (Pa.Cmwlth.1999).

We have reviewed Dr. Raikin's testimony as a whole and are satisfied that his opinion that Claimant was fully recovered from her work-related injury was unequivocal. Dr. Raikin took a thorough history from Claimant, reviewed numerous medical records, conducted a physical examination and definitively opined that she was fully recovered from her work-related injury, that she had subjective pain without any objective findings, and that she was able to work her pre-injury job as a reference librarian.[15] He was meticulously

---

[15] This testimony would be sufficient to meet Employer's burden in a termination petition if the case had commenced on the filing of such a petition. *See Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.),* 550 Pa. 319, 705 A.2d 1290 (1997)(holding that an employer meets its burden to obtain a termi-

nation of benefits when its medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered and can return to work without restrictions, and that there are no objective medical findings

cross-examined and did not alter his opinion. Consequently, we cannot agree with Claimant that Dr. Raikin offered an equivocal opinion and that his testimony is, therefore, incompetent.

We acknowledge that the excerpts highlighted by Claimant indicate that Dr. Raikin thought that a new MRI might be helpful in analyzing her condition. Although a new MRI was never conducted, we liken this scenario to a case wherein a medical expert has not been able to review a claimant's complete medical records. The fact that a medical expert did not have all of the claimant's medical records in formulating his opinion only goes to the weight of the expert's testimony, not its competency. *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997 (Pa. Cmwlth.2007); *Samson Paper Co. v. Workers' Compensation Appeal Board (Digiannantonio)*, 834 A.2d 1221 (Pa. Cmwlth.2003); *American Contracting Enter. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391 (Pa.Cmwlth. 2001). As the failure to review a claimant's complete medical file only affects the weight to be accorded an expert's opinion, not its competency, we fail to see how an independent medical examiner's opinion should somehow be rendered incompetent simply because he does not have the benefit of a more recent, yet non-existent diagnostic test. As such, we reject Claimant's argument.[16]

■ Claimant further contends that the WCJ erred in terminating her benefits because Dr. Raikin recommended additional treatment for her during his deposition.

which either substantiate the claims of pain or connect them to the work injury).

16. Claimant further asserts that Dr. Raikin's testimony is incompetent because Dr. Raikin was not fully aware of all of her pre-injury duties as a reference librarian. While this

She references Dr. Raikin's cross-examination testimony whereupon he stated as follows:

Q. If Ms. Coyne was your patient, what would you prescribe for her ongoing complaints of pain? How would you treat that?

A. As of?

Q. As of when you saw her.

A. As of when I saw her, I would do— some clarification: She has now come to me for assumption of care or I have been treating her from the beginning? Because it would be different.

Q. Let's say she's now come to you for care.

A. For assumption of care?

Q. Yes.

A. I have now seen her for the first time?

Q. Right.

A. I would have her sent back to physical therapy as a start to try and build up the strength in her ankle if she is complaining about subjective pain. If she would have had persistent pain, despite that, I would got (sic) another MRI to rule out any unexpected pathology. I may recommend a stronger over-the-counter anti-inflammatory analgesic to help. If there was no objective cause for her pain, then we may need to treat the pain itself, which sometimes involves medication.

(R.R. at 171–172a).

We reject Claimant's argument. Dr. Raikin was asked what he would do to try to remedy Claimant's subjective com-

may have impacted Employer's ability to return Claimant to work based on an offer of employment in order to obtain a modification or suspension of benefits, this is irrelevant in light of his finding of full recovery.

plaints. We have already determined that Dr. Raikin acknowledged Claimant had subjective pain complaints and that he found no objective basis for those complaints. Caselaw dictates that an acknowledgement of subjective complaints does not necessarily preclude a termination of benefits when there is no objective evidence to support those complaints. *Udvari; see also Jenkins v. Workmen's Compensation Appeal Board (Woodville State Hosp.)*, 677 A.2d 1288 (Pa.Cmwlth.1996). We see no reason to penalize Employer by finding that the WCJ erroneously credited Dr. Raikin's testimony simply because Dr. Raikin attempted to address a hypothetical question posed by Claimant's counsel concerning subjective complaints that, by themselves, do not preclude a termination of benefits. We add that, consistent with *Hannigan v. Workmen's Compensation Appeal Board (Asplundh Tree Expert Co.)*, 151 Pa.Cmwlth. 252, 616 A.2d 764 (1992), answers given on cross-examination do not destroy the effectiveness of a physician's opinion given on direct. We further reiterate that Dr. Raikin did not alter his original opinion following cross-examination.[17]

▄ Lastly, Claimant argues that the Board erred in reversing the WCJ's February 7, 2006 determination that Employer unreasonably contested her Claim and Reinstatement Petitions as well as her original 2002 Penalty Petition. In turn, Claimant seeks to have the WCJ's award of counsel fees reinstated.

▄ Section 440(a) of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 996, provides that if an employer contests liability it will be liable for claimant's costs, including counsel fees, if the matter is resolved in whole or in part in the claimant's favor. That section specifies, however, that attorney's fees may be excluded if the employer presents a reasonable contest. The reasonableness of an employer's contest depends upon whether the contest was prompted to resolve a genuinely disputed issue. *Bolinsky v. Workers' Compensation Appeal Board (Norristown State Hosp.)*, 814 A.2d 833 (Pa.Cmwlth.2003). A reasonable contest will be found if there is an issue as to whether an injury necessarily results in a disability. *Varghese v. Workmen's Compensation Appeal Board (M. Cardone Indus.)*, 132 Pa.Cmwlth. 482, 573 A.2d 630 (1990); *see also Crouse v. Workers' Compensation Appeal Board (NPS Energy SVC)*, 801 A.2d 655 (Pa.Cmwlth.2002). Whether a reasonable basis exists for an employer's contest of liability is a question of law and therefore subject to review. *Thissen v. Workmen's Compensation Appeal Board (Hall's Motor Transit)*, 137 Pa.Cmwlth. 227, 585 A.2d 612 (1991).

As previously indicated, the Board concluded that Employer reasonably contested Claimant's Claim and Reinstatement Petitions because it presented evidence that, if believed, would defeat Claimant's

---

17. In support of her argument, Claimant cites *Ernst v. Workers' Compensation Appeal Board (Rollins Transp. Sys.)*, 720 A.2d 1085 (Pa.Cmwlth.1998)(holding that when the employer's medical expert gives the claimant the benefit of the doubt and imposes restrictions on his work activities based on his complaints of pain, the medical expert's testimony is insufficient to support a termination of benefits even if the expert stated that there are no objective findings to explain the claimant's subjective complaints). Claimant's reliance is misplaced. The employer's medical expert in *Ernst* placed restrictions on the claimant based on his subjective complaints. Thus, termination was improper as *Udvari* requires proof that a claimant could return to work "without restrictions." Dr. Raikin, notwithstanding Claimant's subjective complaints, did not place any restrictions on Claimant. Thus, this matter is distinguishable.

claim for disability benefits. We agree and are remanding this matter for the purposes of allowing the WCJ to determine whether Claimant's contract was not renewed based on conduct tantamount to bad faith similar to what would cause a discharge from employment. Although the WCJ, as fact finder, must determine whether Employer has established that Claimant's contract was not renewed because bad faith conduct, *Gurski*, there is at least sufficient evidence of record, if believed, to place the consequences of her discharge upon her. Thus, when taking into consideration that Employer, in its Answer, acknowledged Claimant sustained a work-related injury but denied her claim to indemnity benefits, Employer raised a genuine issue in contesting her claim. Therefore, consistent with *Bolinsky, Varghese,* and *Crouse,* we find no error in the Board's determination.

Regarding the Penalty Petition, the Board reasoned that although Employer violated the Act by failing to issue bureau documentation accepting or denying liability following receipt of notice of Claimant's work injury, Claimant did not allege this violation in her Petition. Rather, the Board indicated she asserted a "general failure to investigate" and a failure to pay benefits. The Board found Employer genuinely disputed the alleged issues "because [Employer's] liability for Claimant's work injury had not been established at the time, it was not obligated to pay disability benefits." [18]

We agree with the Board's assessment that Employer genuinely disputed Claimant's allegation that it violated the Act because it failed to commence payment of benefits upon receiving notice of her injury. We have previously explained that there was no legally operative document mandating payment of benefits at the time the 2002 Penalty Petition was filed. The more difficult issue is whether the Board correctly found a distinction between alleging a failure to investigate an injury and alleging the failure to issue an NCP, NCD, or a NTCP within twenty-one days of receiving notice of an injury.

The aforementioned Section 406.1 of the Act provides, in relevant part:

(a) The employer and insurer shall *promptly investigate* each injury reported or known to the employer *and* shall proceed *promptly to commence the payment of compensation due* either *pursuant to an agreement* upon the compensation payable *or a notice of compensation payable* as provided in section 407 *or pursuant to a notice of temporary compensation payable* as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer. The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability ...

(c) *If the insurer controverts the right to compensation it shall promptly notify the employe or his dependent, on a form prescribed by the department,* stating the grounds upon which the right to compensation is controverted and shall forthwith furnish a copy or copies to the department ...

(d)(1) In any instance where an *employer is uncertain* whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, *the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation*

---

18. The Board did not fully articulate a basis for concluding Employer genuinely disputed Claimant's allegation that Employer generally failed to investigate her claim.

*payable* as prescribed by the department . . .

(Emphasis Added).

This Court has previously held that the employer's duty to investigate a claim commences immediately upon receiving notice of a possible work-related injury. *Geiger v. Workmen's Compensation Appeal Board (Circle Fine Art Corp.)*, 654 A.2d 19 (Pa.Cmwlth.1994). In *Geiger*, we stated that while the term "prompt investigation" is not defined in the Act, the employer is required to take some affirmative action to investigate claim within a reasonable time period. *Id.* at 21. In *Armstrong v. Workers' Compensation Appeal Board (Haines & Kibblehouse, Inc.)*, 931 A.2d 827 (Pa.Cmwlth.2007), we held that the creation of the NTCP was to afford employers more than twenty-one days in order to investigate a claim and determine its position with regard to the claim's compensability.

■ It may be argued that because an employer's duty to issue bureau documentation appears in the same provision.as its duty to promptly investigate a claim, it may be inferred that the issuance of an NCP, NCD, or an NTCP is actually a part of the employer's duty to investigate and, therefore, a claimant's allegation that an employer failed to promptly investigate her claim would put the employer on notice that she was seeking penalties for a the failure to supply a bureau document. Nonetheless, because of Section 406.1 of the Act's use of the disjunctive term "and," it is apparent that there are two separate duties conferred upon an employer. This is especially true in light of this Court's previous finding that an employer may obtain *more time to complete its investigation* by filing an NTCP. *Armstrong.* Thus, while activities such as making an injury report, interviewing witnesses, and reviewing any available medical records would be part of the investigation, a document such as an NCP or an NCD would be issued following the conclusion of the investigation based on the results of the same. Upon our review, we believe the Board properly found a distinction between a failure to investigate and a failure to issue a bureau document. As such, we see no error in its determination that Employer reasonably contested Claimant's original Penalty Petition as the latter violation was not alleged.[19]

■ We acknowledge that in Claimant's Petition for Review, she mentions that the WCJ and the Board erred in not granting her *Yellow Freight* Motion. Nonetheless, she fails to address this issue in either her statement of questions or argument section of her brief. As such, this issue is waived consistent with Pa. R.A.P. 2116(a) and Pa. R.A.P. 2119(a). *AT&T v. Workers' Compensation Appeal Board (DiNapoli)*, 816 A.2d 355, 361 (Pa. Cmwlth.2003); *LP Water & Sewer Co. v. Pennsylvania Pub. Util. Comm'n*, 722 A.2d 733, 738 (Pa.Cmwlth.1998); *Watkins v. Unemployment Compensation Board of Review*, 689 A.2d 1019 (Pa.Cmwlth.1997).

### ORDER

AND NOW, this 11th day of February, 2008, the Order of the Workers' Compen-

---

**19.** We acknowledge strictness of pleadings is not required in workers' compensation matters and a claimant is entitled to whatever relief the credible evidence shows. *Westinghouse Elec. Corp./CBS v. Workers' Compensation Appeal Board (Korach)*, 584 Pa. 411, 883 A.2d 579 (2005). Therefore, this Court sees nothing wrong with awarding penalties for a violation not specifically pled in the 2002 Penalty Petition. Nonetheless, it does not follow that simply because Claimant ultimately prevailed in obtaining an award of penalties for a violation not pled in the Petition, that Employer should have foreseen such outcome when deciding whether to contest, essentially making the Claimant's case for her.

sation Appeal Board (Board) is vacated in part to the extent it finds Margaret Coyne (Claimant) entitled to indemnity benefits from May 31, 1999 and August 26, 2002. We remand to the Workers' Compensation Judge (WCJ) for issuance of findings of fact and conclusions of law regarding the reason for Claimant's separation from her employment with Villanova University. If necessary, the WCJ should definitively select a wage rate for Claimant's work at Omnicare for the purpose of correctly calculating any entitlement to partial disability benefits. We affirm the Board's Order in all other respects.

Jurisdiction relinquished.