IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Eckart,                        :
          Petitioner        :
                             :
      v.                     :  No. 305 C.D. 2019
                             :  SUBMITTED:  June 28, 2019
Workers' Compensation Appeal   :
Board (Pete's Carstar Collision),   :
          Respondent    :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                       FILED:  August 23, 2019

Mark Eckart (Claimant) petitions for review of the February 21, 2019 Order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting in part Claimant's Claim Petition and denying Claimant's Penalty Petition.  For the reasons that follow, we affirm the Board's Order.

## **Background**

On December 29, 2016, Claimant filed a Claim Petition, alleging that on November 9, 2016, he sustained lumbar radiculopathy and disc herniations during the course and scope of his employment with Pete's Carstar Collision, Inc. (Employer).  WCJ's Finding of Fact (F.F.) No. 2.[1]  In his Claim Petition, Claimant sought full

---

[1] At the January 26, 2017 hearing before the WCJ, Claimant's counsel stated on the record that Claimant's date of injury was November 7, 2016, not November 9, 2016 as identified in the

disability benefits from November 9, 2016 and ongoing. *Id.* Claimant also filed a Penalty Petition, alleging that Employer violated Section 406.1 of the Workers' Compensation Act (Act)[2] by failing to properly investigate his claim before issuing a Notice of Workers' Compensation Denial (NCD) and failing to timely file documents with the Bureau. *Id.* No. 3.

The WCJ held an evidentiary hearing on January 26, 2017. Claimant testified that, at the time of his injury, he had worked for Employer as a full-time auto body technician for two and one-half months. WCJ's F.F. No. 6. Claimant's job position required him to work with heavy equipment and lift the body parts of vehicles. *Id.*

Claimant testified that in October 2016, he was removing a bumper from a pick-up truck when he felt a pain in his low back. WCJ's F.F. No. 6. Claimant stated that the pain felt like an electrical shock that went down his low back and both of his legs. *Id.* He reported the incident to his supervisor. *Id.* The supervisor did not instruct Claimant to see a doctor at that time. *Id.*

---

Claim Petition. Notes of Testimony (N.T.), 1/26/17, at 6-7. However, as discussed *infra*, the WCJ subsequently adopted the parties' stipulated facts, which identified the date of Claimant's work injury as November 9, 2016. WCJ's F.F. No. 5.

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1. Section 406.1(a) of the Act provides in relevant part:

The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407 [of the Act, 77 P.S. § 731,] or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by [the Bureau of Workers' Compensation (Bureau)] and furnished by the insurer. The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability. . . .

2

Claimant testified that he continued to work for Employer until November 7, 2016. WCJ's F.F. No. 6. On that day, while he was lifting a car door to hang it, he felt a pain in his low back and down both of his legs. *Id.* The pain was worse than what he had felt in October. *Id.* Claimant again reported the incident to his supervisor and told him he was going to seek medical treatment. *Id.*

On November 7, 2016, Claimant saw his family physician, Steven M. Rosenberg, D.O. WCJ's F.F. No. 6. Claimant reported pain down his right leg, some pain down his left leg, low back pain, and numbness in both of his legs. *Id.* Dr. Rosenberg ordered an x-ray and gave Claimant a note taking him out of work for one week. *Id.* On November 9, 2016, Claimant gave Dr. Rosenberg's note to his supervisor, who provided Claimant with a list of doctors. *Id.*

On December 12, 2016, Claimant saw Dr. Pfeifer at Rothman Institute. WCJ's F.F. No. 6.[3] Claimant reported severe low-back pain, severe numbness in his right leg from his hip to his knee, and numbness in his left hip area. *Id.* Dr. Pfeifer prescribed a muscle relaxer and ordered a magnetic resonance imaging (MRI) and an electromyogram (EMG) of his lumbar spine. *Id.* Dr. Pfeifer gave Claimant a note releasing him to sedentary duty, but Claimant's supervisor stated that he did not have sedentary work available. *Id.*

Claimant has not returned to work since his November 9, 2016 injury. WCJ's F.F. No. 6. Claimant testified that he continues to have pain in his low back, constant pain in his right leg, and intermittent pain in his left leg. *Id.* Claimant testified that before working for Employer, he did not recall any low-back injuries. *Id.* He did not recall any motor vehicle or slip-and-fall accidents in the last 10 to 15 years that might have injured his back. *Id.*

---

[3] Dr. Pfeifer's first name does not appear in the record.

On cross-examination, however, Claimant testified that in February 2015, he injured his neck while working for Peruzzi Pontiac (Peruzzi) and underwent an MRI. WCJ's F.F. No. 6. He also underwent a cervical fusion for that injury in November 2015. *Id.* Claimant settled his case with Peruzzi for $150,000 in August 2016 and began working for Employer a few weeks later. *Id.*

Claimant did not recall having an MRI of his low back in March 2011 or a computed tomography (CT) scan of his low back in January 2013. WCJ's F.F. No. 12; N.T., 1/26/17, at 26-27. Claimant testified that he had treated with Dr. Rosenberg for low-back issues for the past three or four years. N.T., 1/26/17, at 27. Claimant testified that he had experienced low-back problems after the February 2015 incident with Peruzzi. *Id.* at 28-29.

On May 3, 2017, the WCJ issued an Interlocutory Order, adopting the parties' Stipulation of Facts (Stipulation), which provided:

> a. Claimant had an average weekly wage of $1,040.00 with a corresponding compensation rate of $693.33.
>
> b. [Employer,] through its insurance carrier[,] has agreed to accept the claim for an injury consisting of an aggravation of underlying pre-existing degenerative disc disease of the lower lumbar spine.
>
> c. [Employer] will issue payment to the Claimant of total disability benefits beginning November 10, 2016 up to March 20, 2017.
>
> d. [Employer] will pay for all outstanding reasonable and necessary medical treatment that has been received by the Claimant as a result of the work-related low back injury from November 9, 2016 up to March 20, 2017.
>
> e. [Employer] will reimburse Claimant's counsel for his litigation costs in the amount of $4,081.60 that were incurred in the course of the litigation.

f.  As of March 20, 2017, [Employer] maintains that Claimant is fully recovered from all aspects of his work-related injury and will continue to defend against any claim asserted in the Claim Petition for ongoing disability or need for medical treatment after March 20, 2017.

g. The Claim and Penalty Petitions will remain pending for [d]ecision on all remaining issues that are not otherwise resolved by the Stipulation.

WCJ's F.F. No. 5.

The WCJ held a second evidentiary hearing on July 6, 2017.  Claimant testified that, since the last hearing in January 2017, he treated with Gene Z. Salkind, M.D., who performed a bilateral laminectomy on Claimant's lumbar spine on May 19, 2017. WCJ's F.F. Nos. 10, 11.  Claimant testified that his back feels better in that he no longer has any aching pain. *Id.* No. 11.  Claimant stated that he has some pain from the surgery and "[a] little numbness" in his left leg.  N.T., 7/6/17, at 13.  Claimant testified that he does not believe he has fully recovered from the November 9, 2016 work injury. *Id.* at 14-15.  Claimant has not been released to work since the November 9, 2016 injury. WCJ's F.F. No. 11.

Claimant also presented the deposition testimony of Gary W. Muller, M.D., who first examined Claimant on January 12, 2017.  WCJ's F.F. No. 7.  Dr. Muller diagnosed Claimant with degenerative disc disease at L4-L5, a disc herniation at L4-L5, compression of the nerve root, and radiculopathy. *Id.*  Dr. Muller opined that Claimant's diagnoses were related to his November 9, 2016, work injury. *Id.*  Dr. Muller believed that Claimant's work-related injury was caused by an acute mechanism. *Id.*  He further opined that Claimant could not return to his pre-injury position, but that Claimant could perform sedentary work. *Id.*  Dr. Muller opined that Claimant was not fully recovered from his work-related injury. *Id.*

In support of his Penalty Petition, Claimant presented the deposition testimony of Michelle Regec, a workers' compensation claim adjuster for Employer's insurer.

WCJ's F.F. No. 9. Ms. Regec testified that she was assigned to Claimant's claim on November 21, 2016. *Id.* On November 22, 2016, she spoke with both Claimant and his supervisor about the work incident and left a message with Dr. Rosenberg. *Id.* On November 29, 2016, Ms. Regec issued an NCD because she had not received any medical records documenting Claimant's work injury. *Id.* She testified that she issued an NCD, rather than a Notice of Temporary Compensation Payable (NTCP), because she had not received any medical records documenting a work injury at that time. *Id.*[4] She testified that for questionable claims such as back injuries, actual medical documentation is required to accept a work injury. *Id.*

Ms. Regec further testified that, when approaching the 21-day period after a claim's initiation to issue a Bureau document where no medical documentation has been received, either an NTCP or an NCD may be filed. WCJ's F.F. No. 9. She testified that on December 9, 2016, Claimant informed her that he had experienced back problems prior to his November 9, 2016 work injury. *Id.* She informed Claimant that his denial would be maintained, but she would review further medical records if she received them. *Id.* Ms. Regec testified that she received Claimant's records from Dr. Rosenberg on January 25, 2017. *Id.*

Employer presented the deposition of Dennis P. McHugh, D.O., who examined Claimant on March 20, 2017. WCJ's F.F. No. 8. Dr. McHugh opined that, as of the date of his examination, Claimant's lumbar spine had returned to its pre-injury baseline. *Id.* Dr. McHugh explained that he based his opinion on his review of Claimant's medical records documenting prior low-back pain, as well as his own

---

[4] The NCD stated that Employer denied the claim because Claimant "did not suffer a work-related injury[,] . . . which includes aggravation of a pre-existing condition or disease contracted as a result of employment." Reproduced Record at 2a.

physical examination.  *Id.*  The examination was normal and showed only minor discomfort.  *Id.*

Dr. McHugh reviewed the records of Dr. Rosenberg, which indicated that Claimant had been treating with Dr. Rosenberg for low-back syndrome from October 2013 through November 2016.  WCJ's F.F. No. 8.  He also reviewed records of Dr. Len Brody, an orthopedic surgeon who treated Claimant following his February 2015 injury.  *Id.*; McHugh Dep., 5/25/17, at 23.  Dr. Brody's records indicated that an April 2015 MRI showed degenerative changes and disc herniation at the L4-L5 level.  McHugh Dep., 5/25/17, at 23-24.  Dr. McHugh also reviewed the results of Claimant's January 2013, CT scan and March 2011 MRI, both of which showed degenerative disease at the L3-L4, L4-L5, and L5-S1 levels.  WCJ's F.F. No. 8.

Finally, Dr. McHugh reviewed Claimant's November 2016 x-ray of his lumbar spine, which showed mild to moderate degenerative disc disease and facet hypertrophy, as well as Claimant's January 2017 MRI, which showed disc herniation and protrusion at the L2-3, L3-4, L4-5, and L5-S1 levels.  WCJ's F.F. No. 8.  Dr. McHugh opined that Claimant's January 2017 MRI showed chronic diffused multilevel degenerative changes, which did not indicate that a new, acute injury had occurred.  *Id.*

Dr. McHugh diagnosed Claimant with chronic, degenerative disc disease of the lumbar spine.  *Id.*  He opined that on November 9, 2016, Claimant sustained an aggravation of preexisting, degenerative pathology in his lumbar spine.  *Id.*  Dr. McHugh further opined that Claimant's aggravation was resolved as of the date of his examination, and that Claimant could return to work without restrictions.  *Id.*

On January 2, 2018, the WCJ granted Claimant's Claim Petition in part and terminated Claimant's benefits as of March 20, 2017.  Consistent with the parties' Stipulation, the WCJ found that Claimant's work injury was limited to aggravation of

preexisting lumbar degenerative disc disease. WCJ's F.F. No. 5. However, the WCJ expressly discredited Claimant's testimony regarding the nature and extent of his prior low-back condition. *Id.* No. 12. Although Claimant acknowledged having "issues" with his low back that pre-dated his work injury, "he incredibly could not recall having the previous MRIs or [CT] scan" of his low back. *Id.* The WCJ also found that Claimant "was not forthcoming" about the low-back pain he experienced after his February 2015 injury. *Id.*

Moreover, the WCJ found Dr. McHugh's testimony more credible than Dr. Muller's. WCJ's F.F. Nos. 13-14. The WCJ explained that Dr. McHugh's opinion that, as of March 20, 2017, Claimant's lumbar spine had returned to its pre-injury baseline was supported by his physical examination of Claimant and his review of the medical records showing Claimant's preexisting, degenerative pathology. *Id.* No. 14. The WCJ expressly discredited Dr. Muller's testimony because "Dr. Muller did not receive an accurate history from Claimant concerning his extensive, long-standing low[-]back condition." *Id.* No. 13. Therefore, the WCJ concluded that Employer proved that Claimant had fully recovered from his work injury as of March 20, 2017. WCJ's Conclusion of Law (C.L.) No. 2.

The WCJ also denied Claimant's Penalty Petition because Claimant failed to prove that Employer violated Section 406.1 of the Act. *Id.* No. 3. The WCJ credited Ms. Regec's testimony regarding her investigation of Claimant's claim and the reasons for Employer's issuance of an NCD. WCJ's F.F. No. 15. The WCJ found that Employer properly denied the claim initially because it had not received any medical documentation to support Claimant's alleged injury. *Id.*

Claimant timely appealed to the Board, which affirmed the WCJ's decision. With regard to the Claim Petition, the Board concluded:

8

[T]he WCJ did not err in granting the Claim Petition only in part and in terminating Claimant's benefits as of March 20, 2017. Claimant bore the burden of proving all of the elements necessary to support an award, including the burden to establish the duration and extent of disability. Claimant was able to prove that he sustained a disabling work injury to his lower back through the parties' Stipulation, through which [Employer] accepted Claimant's injury as an aggravation of underlying preexisting degenerative disc disease of the lower lumbar spine. However, Claimant was unable to meet his burden of proving that his injury was more extensive than what was accepted by [Employer], or that his disability was ongoing beyond March 20, 2017.

Bd.'s Op., 2/21/19, at 8 (citations omitted). With regard to the Penalty Petition, the Board determined:

Claimant argues that [Employer] violated the Act by failing to fully investigate his claim and by issuing a[n] NCD instead of a[n] NTCP. Ms. Regec credibly testified that she issued a[n] NCD and not a[n] NTCP because she did not have medical evidence suggesting that Claimant had sustained a work-related lower back injury. She testified that Claimant informed her of his prior back issues on December 9, 2016, but that she told him his denial would be maintained until she received medical records. She testified that questionable injuries such as back injuries required medical evidence before a claim could be accepted, and that without medical evidence, either a[n] NCD or a[n] NTCP may have been issued. While an employer *may* file a[n] NTCP for claims where there is uncertainty regarding compensability or extent of liability, Section 406.1 of the Act does not *require* [an employer] to do so. 77 P.S. § 717.1. Thus, Ms. Regec correctly asserted that it was within her discretion to issue a[n] NCD or NTCP where there was no medical evidence to support Claimant's claim. Furthermore, Ms. Regec was assigned Claimant's claim on November 21, 2016, and on November 29, 2016, she issued her NCD. She credibly testified that she did not receive Claimant's medical records until January 25, 2017, which was two months after Claimant's date of injury. Therefore, we determine that [Employer] promptly and properly investigated the claim, and that the WCJ did not err in denying Claimant's Penalty Petition.

*Id.* at 11-12 (emphasis in original).  Claimant now petitions this Court for review.[5]

## Issues

(1)     Did the Board err in affirming the WCJ's decision on the Claim Petition, where the WCJ disregarded substantial evidence regarding the extent and ongoing nature of Claimant's work injury?

(2)     Did the Board err in affirming the WCJ's decision on the Penalty Petition, where the WCJ disregarded substantial evidence establishing that Employer's investigation of Claimant's claim was insufficient?[6]

## Analysis

### 1.  Claim Petition

To succeed on a claim petition, a claimant must prove that he or she sustained a work-related injury that resulted in a loss of earning power.  *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 402 (Pa. Cmwlth.

---

[5] Our review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated.  *Pa. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

[6] In his appellate brief, Claimant argues that the WCJ "capriciously disregarded" competent evidence in rendering his decision on the Claim and Penalty Petitions.  *See* Claimant's Br. at 15, 17.  However, on appeal to the Board, Claimant argued only that the WCJ's decision on the Petitions was unsupported by substantial evidence.  *See* Pet. for Appeal, 1/16/18, at 2-3; Pet. for Review, ¶ 5.  Because Claimant did not argue capricious disregard before the Board, he has waived that argument on appeal.  Thus, we will consider only Claimant's properly preserved substantial evidence claims.

In a substantial evidence challenge, we view the evidence in the light most favorable to the prevailing party, giving that party the benefit of all inferences reasonably deduced from the evidence.  *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).  "Substantial evidence is such relevant evidence [as] a reasonable mind might accept as adequate to support a conclusion."  *Id.*  "[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made."  *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005).

10

2015). The claimant has the burden of proving all elements necessary to support an award, including the duration and the extent of disability. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Where the connection between the claimant's disability and his or her work is not obvious, the claimant must prove causation by unequivocal medical testimony. *Ingrassia*, 126 A.3d at 402. Finally, the claimant must prove that the injury continues to cause disability throughout the pendency of the claim petition proceedings. *Innovative Spaces v. Workmen's Comp. Appeal Bd. (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994).

Claimant asserts that both his testimony and the testimony of his medical expert, Dr. Muller, established that his work injury is ongoing and greater than the aggravation injury accepted by Employer. Claimant argues that the most recent MRI and EMG of his low back confirmed an acute herniation, whereas the MRIs pre-dating his November 9, 2016 injury did not show any herniation.

Essentially, Claimant argues that the WCJ erred in crediting the testimony of Employer's medical expert over Claimant's medical expert. Determinations of credibility and the weight to be accorded the evidence are within the WCJ's sole discretion. *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Servs.)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including a medical witness. *Id.* Moreover, "[w]here medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 (Pa. Cmwlth. 2006). The WCJ must articulate some objective basis for his or her credibility determinations. *Id.* at 194-95.

We conclude that the WCJ clearly articulated an objective basis for his credibility determinations, and those determinations are supported by the record. The WCJ provided an extensive summary of both medical experts' testimony and explained why he found Dr. McHugh more credible and persuasive than Dr. Muller. The WCJ explained that Dr. McHugh's opinion that, as of March 20, 2017, Claimant's lumbar spine had returned to its pre-injury baseline was supported by his physical examination of Claimant and his review of the medical records showing Claimant's preexisting degenerative pathology. WCJ's F.F. No. 14. The WCJ expressly discredited Dr. Muller's testimony because "Dr. Muller did not receive an accurate history from Claimant concerning his extensive, long-standing low[-]back condition." *Id.* No. 13. Therefore, the WCJ concluded, based on Dr. McHugh's credible testimony, that Claimant had recovered from his work injury as of March 20, 2017. WCJ's C.L. No. 2.

Furthermore, the WCJ expressly discredited Claimant's testimony regarding his history of back problems, finding it "incredible" that Claimant did not remember having the prior MRIs or CT scans of his low back. WCJ's F.F. No. 12. The WCJ also found that Claimant "was not forthcoming" regarding the extent of his low-back pain following the February 2015 work injury at his prior job. *Id.* This credibility finding is particularly significant, because the WCJ had the opportunity to personally observe Claimant's demeanor at two evidentiary hearings. *See Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052-53 (Pa. 2003) (recognizing that where a witness testifies in person before the WCJ, no explanation of credibility determination is required).

Based on the credible evidence of record, the Board determined:

Although Claimant was working full duty at the time of his injury, that does not negate the fact that he was not forthcoming about his long[-]standing lower back pain preceding his work incident with [Employer], particularly regarding his back condition following his 2015 injury. Additionally, in light of Dr. McHugh's credible testimony, there were not obvious pre-injury versus post-injury changes to indicate that Claimant sustained anything more than an aggravation of his preexisting lower back problems.

Bd.'s Op., 2/21/19, at 9-10. Therefore, the Board agreed with the WCJ that Claimant failed to satisfy "his burden of proving that his injury was more extensive than what was accepted by [Employer], or that his disability was ongoing beyond March 20, 2017." *Id.* at 8. We conclude that the WCJ's findings are supported by substantial, competent evidence.

### 2. Penalty Petition

Next, Claimant asserts that the WCJ erred in denying his Penalty Petition because the evidence showed that Employer violated the Act by failing to properly investigate his claim and by issuing an NCD instead of an NTCP. We disagree.

A claimant who files a penalty petition has the burden of proving that the employer violated the Act. *Gumm v. Workers' Comp. Appeal Bd. (J. Allan Steel Co.)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008). Section 406.1(a) of the Act requires an employer to "promptly investigate each injury reported or known to the employer and [to] proceed promptly to commence payment of compensation due." 77 P.S. § 717.1(a). Section 406.1(a) also states that the first installment of compensation "shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability." *Id.*; *see Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ.)*, 942 A.2d 939, 958 (Pa. Cmwlth. 2008) (explaining that Section 406.1 of the Act imposes two distinct duties on an employer once it receives notice of a work injury: to promptly investigate the work injury and to issue a Notice of Compensation Payable

13

(NCP), an NTCP, or an NCD within 21 days). An employer's failure to comply with Section 406.1(a) of the Act may result in the imposition of penalties under Section 435 of the Act, 77 P.S. § 991.[7]

Claimant contends that Employer violated the Act by failing to properly investigate his claim before issuing an NCD. He asserts that Employer's duty to investigate required it to do more than simply wait for Claimant to submit medical documentation.

In support of this argument, Claimant relies on *Geiger v. Workmen's Compensation Appeal Board (Circle Fine Art Corporation)*, 654 A.2d 19 (Pa. Cmwlth. 1994). In *Geiger*, the claimant argued that her employer's examination of her five months after she submitted her doctor's report to the employer constituted an untimely investigation in violation of Section 406.1(a) of the Act. *Id.* at 20. In contrast, the employer argued that it had no obligation to investigate the claim until it received a sworn statement from the claimant's doctor that her injury was work-related. *Id.* at 21.

On appeal, this Court concluded that the employer's failure to take *any* affirmative action on the claim until nine months after receiving notice of the claimant's work injury and five months after receiving a report from the claimant's doctor violated the "prompt investigation" requirement of Section 406.1 of the Act. *Id.* In so holding, we recognized that "[e]ven though what constitutes a 'prompt investigation' is not defined in the Act, fulfilling this mandate requires an employer to do more than wait for the employee to submit a deposition from his or her doctor." *Id.* Thus, we concluded:

> Section 406.1 of the Act requires an employer to take *some affirmative action* to investigate a reported work-related injury within a reasonable time period. Here, [the e]mployer took *no affirmative action* until it had

---

[7] Added by the Act of February 8, 1972, P.L. 25.

14

[the c]laimant examined nine months after it was notified of her claim that she had suffered a work-related injury and five months after receiving her doctor's report.

*Id.* (emphasis added). We noted, however, that "[o]nce [an] employer has notice of [the] injury . . . , as part of its obligation under the Act to investigate, *it may require [the] worker to furnish further information; if not required by [the] employer*, [the] worker need not submit any statement from [a] doctor[,] sworn or unsworn." *Id.* at 21 n.5 (emphasis added); *see Kohler v. McCrory Stores*, 615 A.2d 27, 29 n.2 (Pa. 1992).

We conclude that *Geiger* is distinguishable on its facts. In this case, Employer's insurance adjuster, Ms. Regec, testified that she was assigned Claimant's claim on November 21, 2016. WCJ's F.F. No. 9. The next day, she began investigating the claim by speaking with both Claimant and his supervisor about the work incident and by leaving a message with Claimant's family physician. *Id.* Eight days later, on November 29, 2016, Ms. Regec issued an NCD because she had not received any medical records documenting Claimant's work injury. *Id.* Ms. Regec credibly testified that, for questionable claims involving back injuries, actual medical documentation is required to accept a work injury. As we recognized in *Geiger*, "as part of its obligation under the Act to investigate, *[the employer] may require [the] worker to furnish further information*." 654 A.2d at 21 n.5; *see also Coyne*, 942 A.2d at 958 (recognizing that "making an injury report, interviewing witnesses, and reviewing any available medical records" are part of an employer's duty to investigate under the Act). Therefore, contrary to Claimant's assertion on appeal, Ms. Regec's request for supporting medical documentation was not itself a violation of the Act.

Unlike *Geiger*, where the employer took *no action* for nine months after receiving notice of the claimant's work injury, in this case Employer issued an NCD *eight days* after receiving notice of the claim, while continuing its investigation into

15

Claimant's work injury. *See Darrall v. Workers' Comp. Appeal Bd. (H.J. Heinz Co.)*, 792 A.2d 706, 715 (Pa. Cmwlth. 2002) (upholding the denial of a penalty petition where the employer "took action" pursuant to Section 406.1 of the Act by issuing an NCD within 21 days of receiving notice of the claimant's injury); *see* 34 Pa. Code § 121.13.[8]

Claimant also contends that Employer should have issued an NTCP rather than an NCD because: (1) Employer did not contest the occurrence of the work injury; (2) Claimant immediately sought medical treatment after the injury; and (3) Employer eventually stipulated to Claimant's work injury. Claimant posits that if Employer was uncertain whether his work injury was compensable, it was required to issue an NTCP while it investigated the claim pursuant to Section 406.1(d)(1) of the Act, 77 P.S. § 717.1(d)(1), rather than an NCD.[9]

Claimant's assertion, however, is unsupported by the language of the Act and our case law. It is well settled that "[a]n employer violates Section 406.1 of the Act if it fails to issue *an NCP, an NCD, or a[n] [NTCP]* within twenty-one days of receiving notice of a work-related injury." *Coyne*, 942 A.2d at 952 (emphasis added). Moreover,

---

[8] The regulation at 34 Pa. Code § 121.13 (emphasis added) provides:

> If compensation is controverted, a Notice of Workers' Compensation Denial, Form LIBC-496, shall be sent to the employee or dependent and filed with the Bureau, fully stating the grounds upon which the right to compensation is controverted, *within 21 days after notice or knowledge to the employer of the employee's disability* or death.

[9] Section 406.1(d)(1) provides:

> In any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, *the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation payable* as prescribed by the [Bureau].

77 P.S. § 717.1(d)(1) (emphasis added).

16

Section 406.1(d)(1) of the Act states that if an employer is uncertain regarding its liability or the compensability of an injury, the employer "*may*" file an NTCP "without prejudice and without admitting liability."  77 P.S. § 717.1(d)(1) (emphasis added). However, Section 406.1(d)(1) does not mandate the filing of an NTCP in such circumstances.  *See Gumm*, 942 A.2d at 235 (holding that the employer complied with the Act by using an NCD to contest the claimant's claim on basis that his disability did not result from the work injury, where the employer maintained that the cause of claimant's problems was not the work incident but his preexisting ankle problems).

Furthermore, the WCJ found that Ms. Regec credibly testified that she was investigating the claim and had reached out to Claimant's doctor to obtain medical records.  The Board explained that "[w]hile an employer *may* file a[n] NTCP for claims where there is uncertainty regarding compensability or extent of liability, Section 406.1 of the Act does not *require* [the employer] to do so."  Bd.'s Op., 2/21/19, at 12 (emphasis in original); *see Kohler*, 615 A.2d at 29 n.2 ("[T]he employer and [its] insurer *should commence or deny* the payment of compensation *within 21 days* after the employer has notice or knowledge of the employee's disability.") (emphasis added).  Therefore, because Ms. Regec properly investigated the claim, and Employer had the discretion to issue an NCD rather than an NTCP, we conclude that the WCJ properly denied the Penalty Petition.

### Conclusion

Accordingly, we affirm the Board's Order.

_____

ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Eckart, : 
               Petitioner : 
                : 
                : 
      v. : No. 305 C.D. 2019
                : 
Workers' Compensation Appeal : 
Board (Pete's Carstar Collision), : 
             Respondent : 

# **O R D E R**

AND NOW, this 23rd day of August, 2019, the Order of the Workers' Compensation Appeal Board, dated February 21, 2019, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge