IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prospect Medical Holdings, Inc., :
                              Petitioner :
                                         :
           v.                  : No. 815 C.D. 2023
                                         : Submitted: June 6, 2024
Robert C. Reeder, Decedent, c/o     :
Kathleen Reeder Carr (Workers'      :
Compensation Appeal Board),        :
                     Respondent :

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                             FILED: July 19, 2024

Prospect Medical Holdings, Inc. (Employer) petitions for review of the Workers' Compensation Appeal Board's (Board) orders dated November 12, 2021 (November Order) and July 6, 2023 (July Order) (collectively, Orders), which affirmed the decision of a workers' compensation judge (WCJ), circulated November 5, 2020 (Decision), granting a fatal claim petition (Fatal Claim Petition) filed by Kathleen Reeder Carr (Claimant) on behalf of her husband, Robert C.

Reeder (Decedent), under the Workers' Compensation Act (Act).[1] After review, we affirm the Board's Orders.

## BACKGROUND

On October 20, 2018, Decedent suffered a fatal heart attack while at work for Employer. Reproduced Record (R.R.) at 3a. On April 23, 2019, Claimant filed the Fatal Claim Petition seeking widow benefits alleging Decedent's death resulted from cardiac arrest suffered while Decedent was working at a charity event for Employer. *Id.* On October 25, 2018, Employer issued a Notice of Workers' Compensation Denial denying Decedent's myocardial infarction, or heart attack, occurred in the course and scope of Decedent's employment. *Id.* at 1a-2a.

At the hearing before the WCJ, Claimant testified she married Decedent in 2005. *Id.* at 346a. At the time of his death, Decedent was 61 years old, 5 feet 10 inches tall, and weighed over 300 pounds. *Id.* at 353a, 357a. Claimant testified Decedent suffered from type 2 diabetes and obstructive sleep apnea. *Id.* at 350a-51a. Decedent walked for exercise and enjoyed golfing regularly. *Id.* at 347a. Defendant was not a smoker and only drank alcohol occasionally. *Id.* at 349a-50a.

Decedent worked full time as the Chief of Employer's Emergency Medical Services (EMS) Department. *Id.* at 363a. On the day Decedent died, he was working for Employer as a field paramedic for a stair-walking fundraiser event at a sport stadium. *Id.* at 347a. While Decedent typically worked only one field day per week, this was Decedent's sixth consecutive day of field work. *Id.* at 366a-67a. Decedent tried to get other paramedics to staff the event, but no other paramedics signed up for the shift. *Id.* at 370a. Therefore, Decedent agreed to work even though he was scheduled to work again that night. *Id.* That morning, Claimant met Decedent

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4-2507-2710.

2

around 7:30 at a diner for breakfast before he reported to the stadium for work. *Id.* Claimant testified Decedent seemed normal, and she did not notice any shortness of breath, sweating, or indication that Decedent was having cardiac issues. *Id.*

In support of her Fatal Claim Petition, Claimant presented the expert medical testimony of Dr. William Bachinsky (Dr. Bachinsky), a board-certified cardiologist. *Id.* at 209a-63a. Dr. Bachinsky reviewed Decedent's medical records, death certificate records, and autopsy records, as well as police, fire, and emergency room records, and the deposition testimony of Claimant, Lawrence Worrilow, Sr. (Worrilow), an assistant chief of Employer's EMS Department, and Elizabeth Bilotta (Bilotta), the vice president of Employer's human resources department. *Id.* at 222a. Dr. Bachinsky explained that Decedent's autopsy clearly showed coronary artery disease, which he described as the occurrence of plaque buildup in the coronary arteries which, over time, leads to obstructive lesions or blockages in the arteries and can potentially put a patient at risk for having a heart attack. *Id.* at 225a. Dr. Bachinsky expounded that when a patient dies from coronary artery disease, it can occur in two forms. *Id.* The first way it can occur is when the patient develops an unstable malignant heart rhythm, typically ventricular fibrillation, which results in sudden cardiac death. *Id.* at 225a-26a. The second way it can occur is by a myocardial infarction, which is when the artery becomes fully blocked. *Id.* In that scenario, the myocardial infarction can lead to heart failure and death. *Id.* at 226a. Dr. Bachinsky explained that when a patient dies suddenly without obvious prodromal symptoms,[2] it is likely from a malignant rhythm ventricular fibrillation. *Id.*

---

[2] Dr. Bachinsky explained prodromal symptoms as "symptoms that lead up to the time of an event, so for instance, if the patient has coronary artery disease, they may experience symptoms of chest **(Footnote continued on next page…)**

Dr. Bachinsky testified that in his experience, he has had cases of patients who have coronary artery disease, but do not have symptoms. *Id.* at 228a. Despite their lack of symptoms, he indicated he has multiple examples of patients with stable, coronary artery disease who died due to physical or emotional stress. *Id.* at 229a. He noted "there is no doubt that physical or emotional stress can lead to cardiac events, including heart attacks and sudden death." *Id.* at 229a-30a.

Regarding Decedent, Dr. Bachinsky testified as follows:

> So it's mentioned, we know he was found with a tactical pack next to him, which in my understanding is, you know, in the range of 50 to 60 pounds. We know that he walked 200 to 250 yards. We know that he walked up at least a flight or two of stairs to the area, so it's been well-established that different levels of physical activity can be scored by looking at a metabolic equivalent, which is – short term is called MET. And a metabolic equivalent is a way to gauge the physical activity, stress that one might experience. So we know that climbing stairs, for instance, is equivalent to nine METS. And when we look at the standard stress testing that we perform as cardiologists, nine METS is typically at stage two or three of our protocol, and nine METS is equivalent to a brisk jog. So we know that a patient who has coronary artery disease if we subject them to nine METS of physical stress, that it would not be surprising that we could induce myocardial ischemia or heart irritability due to that physical stress.

*Id.* at 231a-32a. When asked what happens after myocardial ischemia is induced, Dr. Bachinsky explained:

> So what happens is the heart cells or the heart myocyte because of the stress and lack of blood flow become electrically unstable, and that instability of the myocardial cells leads to rhythm disturbances and ultimately ventricular fibrillation when the heart stops. That's called sudden cardiac death.

---

pain or what we call angina. And they will often describe having chest pain when they are doing certain activities, which will lead them to seek medical attention." R.R. at 226a-27a.

4

*Id.* at 232a. While Dr. Bachinsky acknowledged Decedent's coronary artery disease, and numerous contributing medical conditions, he opined that patients with coronary artery disease are at a substantially higher risk of cardiac events during times of emotional or physical stress. *Id.* at 237a. Dr. Bachinsky opined the physical stress of Decedent's climb up the steps at the stadium with approximately 50 to 60 pounds of medical equipment, coupled with the emotional stress of managing an understaffed department and working overtime hours, substantially contributed to Decedent's heart attack, which caused his death. *Id.* at 231a-34a.

Claimant also presented the testimony of Worrilow. *Id.* at 12a. Worrilow testified Decedent's responsibilities as Chief of Employer's EMS Department included overseeing the operation of the EMS, doing payroll, approving the schedule, maintaining records, requesting raises for employees, and overseeing disciplinary issues within the Department. *Id.* at 35a. Worrilow testified Decedent worked the day of the event because the EMS Department was understaffed, and Decedent and Worrilow could not get any other paramedics to cover the event. *Id.* at 16a. According to Worrilow, Decedent agreed to work the event because Decedent was under pressure from Employer to reduce overtime. *Id.* at 32a. On the day of Decedent's death, Worrilow worked the shift supervisor's role at the EMS office on Employer's property, but he responded to the stadium after receiving the call that Decedent had gone into cardiac arrest. *Id.* at 16a. When Worrilow arrived, he observed Decedent was unconscious and two to three police officers were nearby performing cardiopulmonary resuscitation (CPR) on Decedent. *Id.* at 45a. Decedent's equipment was near him, which included his medical bag weighing approximately 30-35 pounds and a monitor weighing approximately 25 pounds. *Id.* at 25a.

Claimant presented the testimony of Matthew Eick (Eick), a paramedic for Employer.[3]  *Id.* at 110a-11a.  Eick testified he was working and responded to the 9 11 dispatch call for Decedent's cardiac arrest at the stadium.  *Id.* at 111a-12a.  Eick testified that upon his arrival, police officers were performing CPR on Decedent, who was unconscious between two rows of seats approximately halfway up the stadium.  *Id.* at 121a.

Finally, Claimant presented the testimony of Bilotta.  *Id.* at 164a-65a.  Bilotta testified that in the summer of 2018, an assistant chief in Employer's EMS Department was promoted to a new position and was not replaced.  *Id.* at 175a.  She also confirmed an additional assistant chief in Employer's EMS Department was on family and medical leave.  *Id.* at 177a-78a.  Bilotta explained she discussed with Decedent changing the scheduling model for the EMS Department and requested that he reduce the amount of overtime for the staff in his department.  *Id.* at 188a.  Bilotta indicated she was aware Decedent was working a lot of hours, but maintained Decedent "was responsible for his schedule, [and] for staffing the schedules, and he was working whatever he wanted to."  *Id.* at 185a.  In her testimony, Bilotta claimed Decedent "volunteered" at the stadium event on the day he passed away, and it was not an event Employer's EMS Department was contracted to staff.  *Id.* at 192a-93a.  Additionally, throughout her testimony, Bilotta assigned responsibility to Decedent for the additional hours he worked and indicated she believed he worked extra shifts because he chose to do so despite management's direction that he stop working extra hours.  *Id.*

---

[3]  Eick testified the difference between an EMT and a paramedic is a paramedic provides a higher level of care and requires additional education.  R.R. at 138a-40a.  He explained paramedics can provide medications and do advanced airway procedures that EMTs are not permitted to do.  *Id.*

6

In opposition to Claimant's Fatal Claim Petition, Employer presented the testimony of Dr. Monaj Khandelwal (Dr. Khandelwal), a board-certified cardiologist. Dr. Khandelwal noted Decedent had progressive, underlying coronary artery disease. *Id.* at 279a. The autopsy report indicated Decedent had other significant conditions contributing to his death including insulin-dependent diabetes and morbid obesity. *Id.* at 282a. He explained that Decedent had every risk factor for developing heart disease and that it is "extremely rare" for patients to have a heart attack due to heavy exertion. *Id.* at 290a. Dr. Khandelwal indicated for a sudden heart attack caused by exertion to occur "would require a dramatic difference in [a patient's] daily routine." *Id.* Dr. Khandelwal opined Decedent's cause of death was his underlying coronary artery disease, which led to his sudden cardiac death or heart attack, and in his opinion, nothing related to his work was associated with or contributed to his sudden heart attack. *Id.* at 289a.

Employer also presented the testimony of Bruce Egan (Egan), Chief of Employer's EMS Department as of February 2019. In October 2018, Egan worked as an assistant chief for Employer's EMS Department and testified he was out on family and medical leave for most of October. *Id.* at 70a. Egan noted Decedent was covering a lot of shifts before his death because the EMS Department was understaffed. *Id.* at 72a. Notably, Egan testified he and other staff members were involved in a lawsuit against Employer because Employer had failed to pay their overtime. *Id.* at 92a. The lawsuit settled in November 2018, approximately a month after Decedent's death. *Id.*

After consideration of the evidence, the WCJ circulated the Decision granting Claimant's Fatal Claim Petition. *Id.* at 384a. The WCJ accepted the testimony of Dr. Bachinsky, finding it more credible and persuasive than Dr. Khandelwal's. *Id.*

7

at 399a. The WCJ credited Dr. Bachinsky's thorough explanation that while Decedent had significant preexisting medical issues with risk factors, Decedent's work activities in the weeks leading up to his death were a substantial contributing factor to his death. *Id.* The WCJ found Decedent was working in an understaffed environment, which required him to work frequently to provide Employer with appropriate staffing. *Id.* The WCJ further found that at the time of his death, Decedent was carrying between 40 and 60 pounds of equipment and had climbed stadium stairs. *Id.* The WCJ rejected Employer's attempt to "paint this scenario as a voluntary endeavor by Decedent," finding that regardless of whether he volunteered for the shift out of necessity or general interest in working at this location, he was still working at the time of his death. *Id.* The WCJ found Dr. Bachinsky "credibly opined that Decedent's work duties and work habits in the week or weeks leading up to his death were a substantial contributing factor in causing his sudden cardiac death." *Id.* Based on these findings and credibility determinations, the WCJ concluded Claimant met her burden of proof.

Employer appealed to the Board. The Board affirmed the WCJ's Decision to grant the Fatal Claim Petition. *Id.* at 442a. However, the Board noted the WCJ failed to make factual findings regarding Claimant's wages or compensation rate, and the Board remanded in part for the WCJ to take new evidence and make a determination on that issue. *Id.*

Employer appealed to this Court and requested supersedeas. On March 24, 2022, this Court quashed the appeal as being from an interlocutory order because the Board's remand was not administrative in nature and thus did not constitute a final, appealable order, and this Court dismissed Employer's request for supersedeas as

8

moot. *See Prospect Med. Holdings Inc. v. Reeder* (Pa. Cmwlth., No. 1364 C.D. 2021, filed March 24, 2022) (Wallace, J.) (single-judge Memorandum & Order).

On remand, the WCJ calculated Claimant's benefits at $974.10 per week less a credit for overpayments. R.R. at 488a. Employer again appealed to the Board, which issued its July Order affirming the WCJ's calculation, and rendering its November Order final and appealable. *Id.* at 512a. Employer now appeals to this Court.

On appeal, Employer's first issue on appeal is whether the Board erred by affirming the WCJ's Decision as substantial, competent evidence did not support the WCJ's findings and the medical testimony regarding causation was not competent and unequivocal. Employer's Br. at 4. Additionally, Employer's second issue on appeal is whether the WCJ erred by overruling Employer's preserved objections. *Id.* In response, Claimant asserts the WCJ's Decision granting the Fatal Claim Petition was supported by substantial and competent evidence, was well reasoned, and was legally correct. Claimant's Br. at 1. Further, Claimant asserts the WCJ properly overruled Employer's objections. *Id.*

## DISCUSSION

We review workers' compensation appeals to determine whether the WCJ's findings of fact are supported by substantial, competent evidence, whether the WCJ committed an error of law, or whether the WCJ violated a party's constitutional rights. *Myers v. Workers' Comp. Appeal Bd. (Univ. of Pa. and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021). In performing a substantial evidence

9

analysis, we view the evidence in the light most favorable to the prevailing party. *Id.* It is immaterial whether there is evidence in the record to support a contrary finding. *Id.*

It is well settled that the WCJ is the sole fact finder in workers' compensation cases and maintains complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight. *Id.* (citation omitted); *Sherrod v. Workmen's Comp. Appeal Bd. (Thoroughgood, Inc.)*, 666 A.2d 383 (Pa. Cmwlth. 1995). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). Neither the Board nor this Court may reject a WCJ's credibility determinations on appeal or reweigh the evidence to make new findings. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003). While mere speculation or conjecture is insufficient to support a WCJ's findings, where there exists the ability to draw reasonable and logical inferences from evidence that is presented, a conclusion so derived will be sufficient, even if it may not be the only possible conclusion. *W. Penn Allegheny*, 251 A.3d at 475. On review, we will overturn a WCJ's credibility determination only where it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts that it is rendered irrational. *Id.*

Under the Act, employers are "liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment." Section 301(a) of the Act, 77 P.S. § 431. The term "injury" is defined in the Act as "an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto." Section 301(c) of the Act, 77

P.S. § 411. The Act also provides that "all injuries caused by the condition of the premises or by the operation of the employer's business or affairs" are included. *Id.*

In a fatal claim petition, the claimant must demonstrate, by substantial evidence, the elements necessary to merit an award of workers' compensation benefits. *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011). The claimant must show "establishment of a work-related injury," "impact on the earning capacity of the employee," and the injury "was a substantial contributing cause in bringing about the death of that employee." *Id.* (citation omitted). Specifically, for a fatal heart attack to be compensable under the Act, the claimant must establish the heart attack was causally related to the decedent's employment. *Dietz v. Workers' Comp. Appeal Bd. (Lower Bucks Cnty. Joint Mun. Auth.)*, 126 A.3d 1025, 1030 (Pa. Cmwlth. 2015). Notably, a claimant need only prove a connection between a decedent's employment and his death; showing a greater than normal exertion is unnecessary. *Id.* at 1029. Where such causal connection is not obvious, it must be established by unequivocal medical testimony. *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 439 (Pa. Cmwlth. 2002).

"Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist." *Id*. Legal competency of a medical witness's testimony is a question of law reviewable by this Court. *Swigart v. Workers' Comp. Appeal Bd. (City of Williamsport)*, 131 A.3d 117, 119 (Pa. Cmwlth. 2015). When we review for competency of medical evidence, we question whether the witness's opinion is "sufficiently definite and unequivocal" to render it admissible. *Cerro Metal Prods. v. Workers' Comp. Appeal Bd. (Plewa)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004).

11

Where a medical expert's opinion is based solely on inaccurate or false information, the expert's opinion is rendered incompetent. *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001). Where a medical expert provides a foundation and testifies that in the witness's professional opinion certain facts exist, or the witness believes certain facts to exist, such medical testimony is "unequivocal." *AT&T v. Workers' Comp. Appeal Bd. (Hernandez)*, 707 A.2d 649, 653 (Pa. Cmwlth. 1998). Upon review, we consider a medical expert's entire testimony rather than mere isolated statements. *Swigart*, 131 A.3d at 119 (citation omitted). Equivocal medical testimony, or testimony based only on possibilities, cannot support a WCJ's finding of causation. *Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ.)*, 942 A.2d 939, 954 (Pa. Cmwlth. 2008).

Here, the WCJ accepted the testimony of Dr. Bachinsky, finding it more credible and persuasive than Dr. Khandelwal's where their opinions differed. R.R. at 399a. Dr. Bachinsky's testimony supports the WCJ's finding that physical and emotional work-related stress substantially contributed to Decedent's fatal heart attack. Dr. Bachinsky explained there is "no doubt" that physical or emotional stress can lead to cardiac events, including heart attacks and sudden death. *Id.* at 229a-30a. Dr. Bachinsky acknowledged Decedent's coronary artery disease, and numerous contributing medical conditions, and explained patients with coronary artery disease are at a substantially higher risk of cardiac events during times of emotional or physical stress. *Id.* at 237a. Dr. Bachinsky opined the physical stress of Decedent's climb up the steps at the stadium with approximately 50 to 60 pounds of medical equipment, coupled with the emotional stress of managing an understaffed department and working so many overtime hours, were work-related

12

factors which substantially contributed to Decedent's heart attack and caused his death. *Id.* at 231a-34a. The WCJ accepted this testimony as credible and persuasive. *Id.* at 399a. Further, Dr. Bachinsky's testimony, when viewed in its entirety, was expressed with sufficient certainty to be deemed competent and unequivocal as to causation.

In its brief, Employer criticizes and challenges Dr. Bachinsky's opinions. *See* Employer's Br. at 12, 18-23. However, insofar as Employer's challenges go to the WCJ's credibility determinations regarding the fact witnesses and the medical experts, such determinations are not reviewable on appeal. *See AT&T*, 707 A.2d at 655. We note that Employer's introduction of contrary evidence does not render Claimant's evidence less substantial or adequate, nor does it compel the WCJ to reject Claimant's evidence. The WCJ did not find the opinions of Employer's medical expert credible or persuasive on the cause of Decedent's heart attack. The WCJ was free to credit Dr. Bachinsky's testimony as to causation over the contrary expert testimony.

Additionally, we discern no merit in Employer's argument that Dr. Bachinsky's opinions were incompetent because he relied on speculation rather than facts regarding Decedent's physical and emotional work-related stress. The WCJ found the testimony of Claimant, Worrilow, and Bilotta (at least insofar as Bilotta's testimony was consistent with Worrilow's testimony) to be credible. Dr. Bachinsky obtained the facts he relied upon from a combination of the medical records and testimony. The facts Dr. Bachinsky relied upon to form his opinion were accepted as true by the WCJ. Therefore, we decline to accept Employer's assertion that Dr. Bachinsky's expert opinion was based on inaccurate or false information and is, therefore, incompetent. Accordingly, we conclude the Board did not err by

13

affirming the WCJ because the WCJ's Decision was supported by competent and unequivocal medical testimony.

We now turn to Employer's second issue on appeal. Employer argues the WCJ erred in admitting and considering testimony it objected to during the hearing before the WCJ. Specifically, Employer challenges (1) the WCJ's admission of Worrilow's statement that he discussed overtime with Decedent, which it claims was in violation of the Pennsylvania Dead Man's Act[4] and the prohibition against hearsay,[5] and (2) the WCJ's admission of Dr. Khandelwal's testimony that he had never heard of knee problems causing shortness of breath, which it claims was speculative. Employer's Br. at 33-34. Before addressing the merits of this argument, we must first ensure Employer properly preserved this issue for our review.

Pennsylvania Rule of Appellate Procedure (Rule) 1551 provides "[r]eview of quasijudicial orders shall be conducted by the court on the record made before the government unit. No question shall be heard or considered by the court which was not raised before the government unit." Pa.R.A.P. 1551. Further, Rule 2117(c) provides:

> **(c) Statement of place of raising or preservation of issues.** Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the statement of the case shall also specify:
>
> (1) The state of the proceedings in the court of first instance, and in any appellate court below, at which, and the manner in which, the questions sought to be reviewed were raised.

---

[4] 42 Pa.C.S. § 5930.

[5] Pa.R.E. 801.

14

(2) The method of raising them (e.g. by a pleading, by a request to charge and exceptions, etc.).

(3) The way in which they were passed upon by the court.

(4) Such pertinent quotations of specific portions of the record, or summary thereof, with specific reference to the places in the record where the matter appears (e.g. ruling or exception thereto, etc.) as will show that the question was timely and properly raised below so as to preserve the question on appeal.

Pa.R.A.P. 2117(c).

The Board's procedural rules set forth specific requirements a party must satisfy to preserve an issue for the Board's review. *See* 34 Pa. Code § 111.11. Section 111.11(a)(2) of the Board's regulations provides that a party must file an appeal with the Board on the Board's provided form and the appeal must contain, in relevant part, the following information:

(2) **A statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of the law which are alleged.** General allegations which do not specifically bring to the attention of the Board the issues decided are insufficient.

34 Pa. Code § 111.11(a)(2) (emphasis added). This Court has found that when a party fails to abide by the requirements of 34 Pa. Code § 111.11(a)(2), the party fails to properly preserve the issue for appeal. *See McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)*, 903 A.2d 94 (Pa. Cmwlth. 2006).

Here, the record reveals Employer failed to include this issue in its appeal to the Board. *See* R.R. at 402a-04a. By failing to raise this issue in its appeal documents as required by 34 Pa. Code § 111.11(a)(2), Employer failed to preserve it for the Board's review. Employer's failure to raise this issue before the Board deprived the Board of the opportunity to review the issue or cure any error.

15

Consequently, under Rule 1551, Employer failed to preserve the issue for this Court's review. Accordingly, this issue is waived.

## CONCLUSION

The WCJ's findings are supported by substantial, competent evidence, and we discern no error of law by the WCJ or the Board. Accordingly, we affirm the Board's Orders, which affirmed the WCJ's Decision.

_____
STACY WALLACE, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prospect Medical Holdings, Inc.,      :
                     Petitioner   :
                                   :
        v.                  : No.  815 C.D. 2023
                                   :
Robert C. Reeder, Decedent, c/o   :
Kathleen Reeder Carr (Workers'   :
Compensation Appeal Board),      :
                     Respondent :

# **O R D E R**

**AND NOW**, this 19th day of July 2024, the Workers' Compensation Appeal Board's orders dated July 6, 2023, and November 12, 2021, are **AFFIRMED**.

_____
STACY WALLACE, Judge